Please, the Court, I apologize. This is the first time I'm here appearing before this Court. Welcome. Glad to have you. Thank you. May I please, the Court, my name is Christopher West, and I'm for the attorney for the plaintiff and the appellant, Marwan Mohtadi. Essentially, what we're doing here is an appeal of a 12B6 motion, motion to dismiss, which is the de novo of review. And what we're appealing here is essentially the Court dismiss the federal claims and remand it to state action, which is still pending. At this point, there's a state action pending. And we're appealing the fact of whether the Court should have dismissed the case or grant leave to amend the case. Let me just sort of let the operative facts, and then I go into why I think it should be, or the position of why it should have not dismissed the federal statutes or grant leave to amend. First, the operative facts is Mr. Mohtadi got a loan from Homecoming. Six months later, he goes to a loan broker, and he ends up, this is the line of credit, he doesn't know that he'd actually got a new loan at that time. Essentially, then... Well, I thought he understood that he'd entered into a home equity line of some kind. That's the document he acknowledges. You know, an equity line, but he thought it was like a checking account. Like, he didn't know that it was actually tied to the house. But, yes, he knew it got an equity line. That's what a home equity line is, isn't it? Well, he thought... Well, actually... It wasn't a signature loan. It was a home equity line. Well, I think he thought it was a signature line. A signature. Because he doesn't even... He signed a bunch of documents that said it was something different. Right. He didn't... The point is, he never... His basic argument is that he never saw this notary. This notary is in Santa Clara. But he agreed that he signed for the home equity line, and it's the same notary. Well, I don't think he agrees that he signed the home... He agreed he got the equity line of credit. But... They didn't just hand him a bunch of money and didn't ask him to sign anything, did they? Yeah, but not in front of... It was just an equity... It was... And if it's a home equity line, it's going to be secured. If it's going to be secured, it's going to need a notary signature. It turns out to be the same notary. Well, I mean, that's where we're at. I mean, I understand... The other issue I think that's raised, which is whether that constitutes a violation of the various federal statutes that are cited... I mean, you may have a state law claim with regard to fraud or who knows what, but how does that connect up with the specific claims that there's a violation of RESPA or the Debt Collector Practice Act or the Credit Reporting Act? Okay. Let's take RESPA, for instance. Assuming that he did... Of course, it's all a trigger of pleading here, but assuming that he did get this loan, he was pleading and pleading that he didn't know anything about that Provident had the loan. He was... The payments were the same. Everything was the same on the loan. The only thing that triggered this discovery was the fact that when the impounding... was much higher than expected, and that's where he started the investigation. But the point is he didn't know that it went from the loan was refinanced and homecoming was out, Provident was in. He just... His mind, it was the servicer. That's reasonable at that time, and it still is. Servicers are changing all the time, the way the banking system and the mortgage system is right now. Is there an allegation as to how he would have known about the... that it was simply a transfer when he alleges he didn't receive notice of the transfer? Well... What's the allegation that he knew... Why did he know this was a transfer when he also alleges he didn't receive notice of the transfer? Well, he basically received notice from Provident, and he made payments to Provident, okay? He knew that. He knew that. He knew Provident was there. What he didn't know was Provident's status. To him, he just assumed Provident was a new servicer, and not a... not that the loan had been refinanced and put into Provident, and the trustee was now in Provident's name. And I would say if we're going to argue that Provident is... that the deed was proper or something, then Provident's response on the RESPA, there was never any initial notifications when the loan was done at any time. And I don't think there's an allegation that the qualified written request was proper to respond to. He... That's the issue. If the trustee is there, then the fact that he'd know about it would automatically violate RESPA. And I don't think that's what he was talking about, because there was no notification there. Okay. What is the harm that you're upset about with respect to these statutes? Well, the fact that he didn't know, he didn't know... The fact that he didn't know that he had a new loan or a new... you know, a refinance, he's got certain new terms, and he basically... And that's where he got into trouble and couldn't pay the loan up. That's where the problem arose. And he got a loan that he didn't... he's harmed by the fact he got a loan he didn't know about. Well, it sounds like the only harm you've identified is the increase in the amount that he was being expected to pay. I don't see that as a cause of action that's pled. I mean, that might be a breach of contract action, that the loan doesn't permit that kind of payment. But that doesn't constitute, as I understand it, a violation of RESPA, of the FDCPA, of the Fair Credit Reporting Act. That's a different kind of grievance. What's the harm that relates to the allegations under the federal statute? Well, he got a term change. He had one loan that was one way, and then there's a different term, and there's no notice of the new term. Wouldn't that be a RESPA violation in itself? No. RESPA doesn't... You haven't pointed to anything. Your RESPA claim is strictly about the failure to notify of the change in servicer. The documentation doesn't suggest there was a change in servicer. It suggests there's this whole new loan. So you're alleging there's this whole new loan that my client didn't know about. Where in RESPA does that become a violation? Well, if you get a whole new loan, there's initial RESPA disclosures. There was no disclosures of the new loan. He found out about it when the deal went bad, when the impound came out. That's when the first time he found out that, hey, there's a new loan from Providence. And that apparently is the only actual injury he's alleging. Is that correct? Right. But, I mean, he would have had a different issue if he had known from the beginning, from Providence, and from day one when it switched, this is the new loan, this is the initial booklet, this is the new loan, and these are the different terms. He could have done something more about it. That's not a breach of contract action. You're charging me more than the contract permits. Well, if he's getting a new loan, though, right? If he's getting a new loan, yeah. Besides, there is a breach of contract. He's alleging somehow they've inflicted this loan upon him he didn't take. In fact, if you follow the logic, the first loan has been satisfied. He owes nothing to anybody because he claims he's not at all responsible for the second loan. It's not a breach of contract action if they're trying to collect money from him. He doesn't owe it. My point is I don't understand why this case is in Federal court on these Federal statutes. I understand the grievance that's being alleged. I heard your response to Judge Schroeder's question about what's your injury. The only injury I've heard of is that they raised the payments on him based on the terms of this loan he claims he never entered into. Fine. Sounds like a great breach of contract action. I don't understand how it's a violation of any of the statutes that are in Federal court. It's actually a violation to not to basically not give the, you know, the borrower notice of his loan and its terms. So that's just a straight statutory violation. Although I would argue that he's damaged by the fact of having this new loan and having something put upon him that he didn't contract for. But the notice would have been of a transfer to a new servicer, not a new loan. There's a disconnect there, isn't there, between what notice you claim is the violation of RESPA and what actually happened and is pled? Well, that's where I probably wouldn't need to amend because I think the initial complaint kind of gets it wrong, I mean, unfortunately. But I think what's really, if you look at the factual standard here, what happened was he didn't get notice of the new RESPA disclosures at the beginning of the loan. So, yeah, I understand the complaint and someone pleading gets kind of misdirects the court, you know, district court the wrong way. I understand that. But in terms of leaps of man, we're saying this is what happened. Now that we're, you know, some of the clouds have just settled and we've figured out what's going on here, the real violation is he never got any disclosures until. But he knew that he was making payments to Provident. Yes. Yeah, that's correct. That is correct. He did know that he was making payments to Provident. He thought he was making payments to Provident as a servicer and not as a, you know, not as they were the beneficiary of the mortgage loan, mortgage bank essentially. Anyways, that's RESPA. In terms of the Fair Debt Collection, no, in terms of the Fair Credit Reporting Act, essentially Provident is a furnisher of information. And essentially when he goes to, he, Mr. Mattotti, when he complains to everybody, credit agencies, starts an investigation. I don't, I think we could argue at the police station whether, dispute whether the investigation was reasonable based on the fact now that he's coming to Provident, making complaints, credit reporting agencies to make a complaint, and then they're sending out, CRAs are sending out requests to Provident, whether the investigation was reasonable. Now, we have a deed that's, or a deed that's notarized for somebody in Santa Clara for somebody that's in Los Angeles, 700 miles away. And the borrowers say, wait a minute, I was never in Santa Clara to notarize this document. I never met this person. I think there's a reasonable dispute. And then when it goes through, the debt should at least be recorded on the, and his credit report is being disputed because Mr. Mattotti is, you know, he's pursuing a national, federal and national state court saying, I dispute this debt. It should, it should go back on this record as being disputed. So I think there we rise to a fair credit reporting act. And that is pled in the complaint, correct? Impaled in their duty to investigate before furnishing the information to the credit reporting agencies? Yes, that's what I believe is pled in there. Maybe not as artful as it should be, but yes. That's the intent of that pleading? Yes. And I will submit on fair debt, correct? At this point, we bring the law, and I submit that there's no claim on the Fair Debt Collection Practices Act. But I would still argue that fair credit reporting act and RESPA would lead to a claim. Can you save the balance of your time for rebuttal? Yes, sir. You may. Good morning, Your Honors. May it please the Court. Neil O'Hanlon for the defendant, Anna Pelley, Provident Funding Associates. The district court, as was proper, accepted as true the allegations made by the plaintiffs in the First Amendment complaint. It was indeed the First Amendment complaint. There had been a prior complaint, a prior motion to dismiss. The result was an amendment, and the First Amendment complaint then became the subject of a new motion to dismiss. So this is not the first and only opportunity that the plaintiff had in order to try to plead federal claims properly. The district court took judicial notice, but not of any disputed facts. And I think as has been conceded here today, Mr. Motadi's position as stated in the First Amendment complaint, as stated in his opening brief, and as stated by his counsel today, is that he is acknowledging that there was indeed a loan obtained from Provident Funding which paid off the homecomings loan. Now, most importantly, the district court did not look at the recorded documents and assume that they contradicted what Mr. Motadi was saying. If one wanted to get beyond the motion to dismiss stage, there would be many things that one could say about the claims that are being asserted here. But looking just at the issues that are really properly before the Court today, have federal claims been stated? The Court accepted as being true Mr. Motadi's allegation that he did not knowingly take out a loan, accepted as true his statement, as far-fetched as it might seem, that he had never gone to Santa Clara in order to sign loan documents in front of a notary, whereas, in fact, the document shows that it was signed in Los Angeles. Mr. Motadi simply has never understood that a notary's jurat can be issued out of one particular county, but that doesn't mean that's where loan documents are signed. And the Court looked at all those things and then said there were three federal claims that are asserted here. With respect to RESPA, the Court concluded that in light of Mr. Motadi's own allegation that there was a new loan that paid off the homecoming's loan, even though he says he didn't knowingly take the loan out and that, indeed, his signature on that loan may have been forged, the Court said that does not give rise to a claim under RESPA because there was no transfer of servicing. So the statute that allegedly was violated simply is not applicable based upon the plaintiff's own allegations. Could RESPA possibly be applicable if the plaintiff believed, reasonably believed, that there was a transfer of the servicing rights as opposed to a new loan? No, Your Honor. We are aware of no authority that would support that proposition. And, in fact, what is alleged in the First Amendment complaint is that the plaintiff is a private investigator, that for seven years he made payments to Provident Funding, not really understanding what the state of affairs was, allegedly. And then only when he failed to pay real estate taxes, and that caused an increase in his impound accounts, did he then look at recorded documents and realize, oh, my goodness, for the last seven years I've actually had a loan from Provident Funding. I just wasn't aware of that. Now, as far-fetched as that allegation may be, it was accepted as being true. And there is no RESPA violation unless there is indeed, in fact, a transfer of servicing, because the statute upon which the claim is based specifically deals with the obligation of the outgoing servicer to give what is known in the trade as a goodbye letter to the borrower, and the obligation of the incoming servicer to give a welcome or hello letter to the borrower. Now, none of that factually applies here. And the plaintiff's own allegations demonstrate that there can be no RESPA violation. Now, the same facts, I think, put to rest any possible claim under the Fair Debt Collection Practices Act, but we have had a concession here today that there is no merit in that particular claim. It leaves us with the Fair Credit Reporting Act. And in the First Amendment complaint, there is an effort to assert two claims under the Fair Credit Reporting Act. The first arises under 15 U.S.C. 1681e. But when one peruses that statute, it immediately becomes apparent that it is only applicable to the duties of a consumer reporting agency. It does not have anything to do with the duties of a furnisher. And it has been acknowledged in the opening brief and also in argument today that provident funding in the parlance of that statutory scheme is a furnisher of information. So the real claim that's asserted under the Fair Credit Reporting Act arises under 15 U.S.C. 1681s-2. And that is the claim that the First Amendment complaint really states. It states that inaccurate information was reported. What was allegedly inaccurate about the information? Well, indeed, the very fact that the plaintiff says he never took out the loan. Therefore, anything reported about the loan would have to be inaccurate. However, as is conceded in the opening brief, and as is abundantly clear from a review of the statute itself, there is no private cause of action for a violation of subsection A of that statute. So it puts to rest any possibility that the First Amendment complaint stated a claim under the Fair Credit Reporting Act. What about subsection B? Subsection B, in a proper case, would give rise, we believe, to a claim for relief, a private cause of action. However, the predicate of subsection B, again, as is clear from a plain review of the statute, after receiving notice pursuant to section 1681iA2. And when one cross-references this statute to the statute that's cited, it becomes clear that that is a notice not coming from a borrower or consumer, but rather a notice that's coming from a consumer reporting agency. So there's a separate statutory scheme that applies in that situation. Now, that has never been alleged in the First Amendment complaint. It was mentioned in opposition to the motion to dismiss that there could be a private cause of action under that section of the statute. But really, that's more or less a theoretical discussion. If it's not pleaded in the complaint, the fact that time and attention is spent, especially in the opening brief, talking about how there can be a private cause of action is really of no moment here, because there was no effort to plead a claim under that statute. Kennedy. Why could that not have been pled in this case were there leave to amend granted? Well, first of all, there was no suggestion in the opposition that there were any facts to support such a claim. It was simply stated, I think because of legal error on the part of the lawyers who were drafting the brief, they were looking to find some authority that said there's a private cause of action under this statute. Well, they found authority under the wrong section of the statute and probably didn't realize what they were arguing. They never suggested that there were facts to support the application of subsection B of the statute. And then in the opening brief, there's an extensive portion that's plugged into the brief that's evidently taken from someone else's brief, because it talks in one point about whether the Court has tribal jurisdiction. And again, I think without a lot of thought being applied here, arguments are made about how there is a private cause of action for that subsection B claim, but no one looks back at the first amendment complaint to see that that simply was not pleaded. And we're not certainly aware of any basis on which it could be truthfully pleaded, and there was no suggestion made to the district court that leave to amend further should be granted. I had two bites of the apple. I think the district court correctly determined that indulging every possible inference in favor of the plaintiff, this is simply not a Federal case. This should be pursued in State court, which is exactly, as counsel noted, what Ms. Comotati is doing now. So we submit that the ruling of the district court was correct and it should be affirmed on appeal. You've indicated that the parties, that the adversary, lawyers on the other side may not have been fully knowledgeable. Would you address the sanctions issue, please? Yes. This has been an unfortunate case, really from the beginning, because I think the plaintiffs have not been fully aware of what they were pleading and have not complied with normal procedures and rules applicable to Federal court litigation. We have one dramatic example of it that led to an actual award of sanctions. In that particular instance, it was in the context of the motion to dismiss the first amendment complaint. And the lawyers who were responsible at that time waited until the time to file opposition had passed. And then they submitted an improper ex parte application that said, this is complicated, we would like more time. There were no declarations supported to indicate any emergency. It may have been without merit, may have been improper, but that doesn't necessarily make it for an improper purpose or violation of Rule 11, does it? Yes. I think it would clearly be a violation of Rule 11. And I think that the court felt it was also a violation of 28 U.S.C. 1927. Under Rule 11, the lawyers, you know, making that improper request, waited until their time to oppose the motion had already passed, which under the local rules would be the equivalent of consent to the granting of the motion. Then they filed an ex parte application, which did not comply procedurally with any aspect of the district court's rules relating to ex parte applications. And then substantively, there was nothing there. It simply said, we would like more time. There was no declaration supporting why they needed more time, why they waited until then, or anything of that sort. It did, in fact, cause harm, because both Homecomings and Provident Funding did have to spend time responding to it. It caused the district court to have to change its schedule, because the hearing date was, in fact, changed in order to give more time to the plaintiff. And the judge felt that this was really such an abusive litigation tactic that he issued an order to show cause and gave them an opportunity to explain what had happened. So I think due process was certainly followed here. The response to the order to show cause was basically a vituperative attack on me, and nothing more than really just an ad hominem attack on counsel for submitting a fee request in response to the district court's direction that we should do so. And what the district court awarded was less than three hours of attorney time, approximately $1,600. So it's certainly not a shocking sanctions award. I don't typically, Your Honor, request sanctions from other lawyers. We did not ask for the sanctions here. This was instigated by the district court. However, I would submit that it was more than justified under the circumstances. I am prepared to submit unless there are any further questions. Roberts. It appears there are not. Thank you. Thank you. Robalo. So, please, the court, have you addressed first the sanctions issue and that particular issue? Appellant's position basically is it was a it was whether it was a mistake there in terms of missing the error and all that, not being familiar as one should be with the federal court. It was done in good faith and being zealous enough for the client to try to get a best possible chance to get an amended complaint. The notion that there are deadlines is hardly unique to federal court, is it? I assume the State of California's courts have deadlines that they expect attorneys to apply with as well. Yes. And the other thing I was hoping to ask, is why was the State of California so unpopular in the federal court? The fact is, I always have been. Well, what was so novel here that explains why the events unfold in the way they did that caused the district court on its own initiative to decide that sanctions should be awarded because its schedule had been disrupted and the defendants had been forced to spend additional time? Well, I don't think it was just basically a miscalendering, a missed, you know. So that's not something unique to federal court, is it? No. I mean, the fact that you're not familiar with what happens in federal district court doesn't sound to me like an explanation for what happened. Well, but it doesn't mean that it's a willful situation, though. I mean, it's basically each was trying to clear it up. I mean, this is another, it's like 60B motion in here or 473 in the state court. You're trying to clear up a mistake. And there's no, I mean, I'm not sure whether it was real harm. I mean, yeah, it was a change in calendaring. It was a three-page opposition. I don't think that took that much time to do. And I'm convinced that maybe there is, you know, there's always a little bit of shuffling around when things get missed. But I don't think it's dramatic enough to rise to a Rule 11 violation. One thing. The second thing I want to address is I think we should have, even though it was the first amendment complaint, as was argued earlier in another case, we should have had opportunity. Courts are liberal with pleading and prefer cases heard on the merits. So I think one more shot would have been there. There could have been, you know, that probably would have been it. But the courts could have said, well, this is your last shot. You don't get it right here. You're done. And there's other limitations in pleading that naturally cut them off so you don't get that ridiculous situation where you get six to many complaints, so on and so forth. Thank you. We thank both counsel for your arguments. The case just argued is submitted. That concludes the argument calendar for today.
judges: Tunheim, Schroeder, Clifton